**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **JAMES VOISIN, ET AL.,** | * | |
| | * | |
| **Plaintiffs,** | * | **NO. 07-54 L** |
| | * | |
| **VERSUS** | * | **Judge Lynn J. Bush** |
| | * | |
| **THE UNITED STATES OF AMERICA,** | * | |
| | * | |
| **Defendant.** | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

**GLADSTONE N. JONES, III**
**LYNN E. SWANSON**
**JONES, VERRAS & FREIBERG, L.L.C.**
601 Poydras Street, Suite 2655
New Orleans, Louisiana 70130
Telephone: (504) 523-2500
Facsimile: (504) 523-2508
E-mail: gjones@lawjvf.com

**Counsel for Plaintiffs**

**Of Counsel:**

**ANDREW L. KRAMER**
**ELKINS, P.L.C.**
201 St. Charles Avenue, Suite 4400
New Orleans, Louisiana 70170
Telephone: (504) 529-3600
Facsimile: (504) 529-7163
E-mail: akramer@elkinsplc.com

**FRANK C. DUDENHEFER, JR.**
**THE DUDENHEFER LAW FIRM, L.L.C.**
601 Poydras Street, Suite 2655
New Orleans, Louisiana 70130
Telephone: (504) 525-2553
Facsimile: (504) 523-2508
E-mail: FCDlaw@aol.com

**TABLE OF CONTENTS**

**TABLE OF CONTENTS** . . . . . . . . . . i

**TABLE OF AUTHORITIES** . . . . . . . . . . ii

**OPPOSITION TO MOTION TO DISMISS** . . . . . . . . . . 1

**I. BACKGROUND** . . . . . . . . . . 1

**II. THIS MATTER IS NOT BARRED BY THE LIMITATIONS PERIOD IN 28 U.S.C. § 2501** . . . . . . . . . . 4

**III. ALTERNATIVELY, PLAINTIFFS' DECLARATORY RELIEF CLAIM IS NOT WITHIN THE JURISDICTION OF THIS COURT AND SHOULD BE DISMISSED WITHOUT PREJUDICE** . . . . . . . . . . 10

**IV. CONCLUSION** . . . . . . . . . . 12

**CERTIFICATE OF SERVICE** . . . . . . . . . . 14

## TABLE OF AUTHORITIES

### CASES

*Amoco Production Co. v. Hodel*, 815 F.2d 352 (5th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Bryan v. Kennett*, 113 U.S. 179, 5 S.Ct. 407, 28 L.Ed. 908 (1884) . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Capron v. Van Horn*, 258 P. 77 (Cal. 1927) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Dow Chemical Co. v. United States*, 32 Fed.Cl. 11 (1994), *affirmed in part, reversed in part on other grounds*, 226 F.3d 1334 (Fed. Cir. 2000) . . . . . . . . . . . . . . . . . 8

*Dwen v. United States*, 62 Fed.Cl. 76 (Ct. Fed. Cl. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Figuera v. United States*, 57 Fed.Cl. 488 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Izaak Walton League of America v. St. Clair*, 497 F.2d 849 (8th Cir. 1974) . . . . . . . . . . . . . . . . . 9

*Ramming v. United States,* 281 F.3d 158 (5th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Sisseton-Wahpeton Sioux Tribe v. United States*, 895 F.2d 588 (9th Cir.), *cert. denied*, 498 U.S. 824 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Soulard v. United States*, 29 U.S. 511 (1830) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Strother v. Lucas*, 37 U.S. 410, 435, 9 L.Ed. 1137 (1838) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*United States v. Alire*, 73 U.S. 573 (1868) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. King*, 395 U.S. 1 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Whited & Wheless*, 246 U.S. 552, 38 S.Ct. 367, 62 L.Ed. 879 (1918) . . . . . . . 8-9

*Voisin v. United States*, 2006 U.S.Dist.LEXIS 62694 (E.D.La. 2006) . . . . . . . . . . . . . . . . . . 3, 11

**STATUTES**

28 U.S.C. § 1166 . . . . . . . . . . 8

28 U.S.C. § 1491 . . . . . . . . . . 10

28 U.S.C. § 2501 . . . . . . . . . . 4, 8, 12

35 U.S.C. § 286 . . . . . . . . . . 8

41 U.S.C. §§ 601-13 . . . . . . . . . . 11

FRCP 8 . . . . . . . . . . 20

RCFC 12 . . . . . . . . . . 4, 12

**OPPOSITION TO MOTION TO DISMISS**

This memorandum is submitted on behalf of Plaintiffs, James Voisin, et al., in opposition to the Motion to Dismiss filed by Defendant, the United States of America.

## I. BACKGROUND

As described in detail in the Amended and Transferred Class Action Complaint filed herein, Jean Voisin received an "Order of Survey" or grant to the property now known as Last Island (or Isle Derniere) directly from the Spanish government in 1788. From that date, Jean Voisin held complete and absolute title to this island. Indeed, from 1788 until his death in 1820, Jean Voison continuously lived and worked on the island, which also became known as "Isle a Voisin" and included a bayou referred to as "Bayou Voisin." Thereafter, his son, Jean Joseph Voisin, continuously lived and worked on the island through the devastating hurricane in 1856 and until his death in 1874, despite numerous intrusions by illegal patent holders beginning in the late 1840's.

On April 30, 1803, the United States and the French Republic entered into the Louisiana Cession Treaty (also commonly referred to as the Louisiana Purchase). While the public lands of the cession territory became part of the United States public domain when the treaty was consummated, the inhabitants thereof were "maintained and protected" in the free enjoyment of their "property." In other words, the Louisiana Purchase did nothing to interrupt or extinguish the ownership rights of the citizens of the newly ceded territory that were undeniably granted by the Spanish government prior to 1800.

Accordingly, the United States Supreme Court has held in numerous decisions that the rights of occupation based on regular Spanish orders of survey between 1769 and 1800 must be considered

"property" within the ambit of the Louisiana Purchase.[1] While such rights were subject to verification and confirmation by federal law, the United States – as a trustee established by virtue of the protections in the Louisiana Purchase – had an express duty to convey the property to the rightful owner. Additionally, when Louisiana was admitted into the Union in 1812, such Spanish property rights came within the ambit of the Fifth Amendment to the United States Constitution, which prevents the government from taking private property without a public purpose and without just compensation.

The Spanish Order of Survey for Last Island that was granted to Jean Voisin in 1788 by Governor Miro was thus, in the first three decades of United States rule in Orleans Territory and in Louisiana, technically part of the United States public domain but in substance a right in (or to) property belonging to Jean Voisin, protected as such by the Louisiana Purchase and Constitution of the United States. When this right was confirmed by an Act of Congress in 1835, Jean Voisin's property right to Last Island was transmitted into a Congressional grant of the United States public domain, still subject to United States public law and the continuing jurisdiction of the federal public-land authorities. Rather than comply with its legal duty and this Congressional Act, however, the

[1] *See Strother v. Lucas*, 37 U.S. 410, 435, 9 L.Ed. 1137 (1838) ("This Court has defined property to be any right, legal or equitable, inceptive, inchoate, or perfect, which before the treaty with France in 1803, or with Spain in 1819, had so attached to any piece or tract of land, great or small, as to affect the conscience of the former sovereign, 'with a trust,' and make him a trustee for an individual, according to the law of nations, of the sovereign himself, the local usage or custom of the colony or district; according to the principles of justice, and rules of equity.") *See also Soulard v. United States*, 29 U.S. 511, (1830); and *Bryan v. Kennett*, 113 U.S. 179, 5 S.Ct. 407, 28 L.Ed. 908 (1884).

government violated its trustee relationship by granting patents for the property to persons and entities other than Jean Voisin or his descendants.

Plaintiffs originally filed a Class Action Complaint in the United States District Court for the Eastern District of Louisiana on April 25, 2005, naming the United States, the State of Louisiana, and Louisiana Land & Exploration Company ("LL&E") as defendants. On March 29, 2006, after some initial delays due to Hurricane Katrina, United States District Judge Mary Ann Vial Lemmon heard and subsequently granted the Motion to Dismiss filed by the State of Louisiana, but denied the United States' Motion to Dismiss, instead ordering the transfer of plaintiffs' claims against the United States to the Court of Federal Claims. On August 18, 2006, Judge Lemmon denied the United States' Motion to Reconsider, which again requested the complete dismissal of plaintiffs' claims, but, in that same Order, granted LL&E's Motion to Dismiss. *See Voisin v. United States*, 2006 U.S.Dist.LEXIS 62694 (E.D.La. 2006). Thereafter, this matter was transferred to this Court and, in accordance with Rule 3.1(a), plaintiffs filed their Amended and Transferred Class Action Complaint.

In their Amended and Transferred Class Action Complaint, plaintiffs seek a declaratory judgment against the United States finding that

> (a) any and all acts conveying, granting, or transferring title or patents to l'Isle Longue (also known as Long Island, Last Island, or Isles Dernieres) to anyone other than Jean Voisin or his descendants are null and void, and
>
> (b) the direct descendants of Jean Voisin are entitled to exclusive possession of, and full dominion and power over, the lands, minerals, and other natural resources subject to the 1788 Order of Survey from the Spanish government to Jean Voisin.

Plaintiffs also set forth a cause of action against the United States for damages resulting from the uncompensated and unlawful taking of the property by the United States.

Pursuant to Rules 12(b)(1) and 12(h)(3) of the Court of Federal Claims ("RCFC"), the United States now moves to have all causes of action against it dismissed because it argues that plaintiffs' damage claims are barred by the statute of limitations and plaintiffs' declaratory relief claims cannot be heard by this Court.

## II. THIS MATTER IS NOT BARRED BY THE LIMITATIONS PERIOD IN 28 U.S.C. § 2501.

As discussed in the Amended and Transferred Class Action Complaint, the Voisin family has spent the last 150 years or more seeking a final decision by the United States as to the title and ownership of Last Island. In the 1850's, Jean Joseph Voisin, the son of the original title holder, requested and then spent several years pursuing a decision by the United States General Land Office, which opened a formal inquiry, accepted evidence, and took sworn testimony:

> 43.
>
> After these affidavits were submitted, Jean Joseph Voisin's attorney, F. C. Laville, asked the General Land Office Commissioner, Mr. Butterfield, to make a decision on the claim. Because no decisions were forthcoming, Mr. Laville continued sending letters to Mr. Butterfield and other government officials throughout 1852 and 1853.
>
> 44.
>
> Then, on October 10, 1853, the new Commissioner of the General Land Office, John Wilson, directed the Register and Receiver in New Orleans to take testimony and "make a final examination of the matter after due notice to all parties interested, and to report the result for definitive action of this office."
>
> 45.

> In January and February of 1854, four witnesses, one of whom had submitted an affidavit in 1852, were deposed under oath by the Register and Receiver in New Orleans about the Voisin family's claim to what was then known as Last Island.

Unfortunately, before a decision was ever made by the federal government, a devastating hurricane destroyed much of the island, killing hundreds of people, including many of the alleged patent holders. No further effort was undertaken by the federal government to resolve the title dispute thereafter.

More recently, the Voisin descendants have taken up the cause initiated by Jean Joseph Voisin again to no avail:

> 57.
>
> Since or about the late 1980's, various members of the Voisin family have inquired unsuccessfully into the validity of their family's title claim to Last Island, Louisiana. In a letter dated February 21, 1990, A. Nate Felton, Chief of the Southern Adjudication Section of the Bureau of Land Management responded to one such inquiry and confirmed the Voisin claim:
>
>> The records on file in this office, the National Archives and Louisiana Department of Natural Resources indicate that T. 24 S., R. 15 E., S.E. District, State of Louisiana, was encompassed by the private land claim of Jean Voisin, confirmed by Sec. 1, Act of March 3, 1835 (4 Stat. 779, 780) entitled "An Act for the final adjustment of the claims to land in the south-eastern district of Louisiana." Reference was also found in 6 American State Papers 665, 666, 667, 673, and 702, Gales and Seaton Edition (1934) under Certificate No. 50 ...
>>
>> Records obtained from the Federal Records Center failed to disclose the patent certificate referred to above. Please be advised, the fact that patents were not issued does not affect the title of said lands. The confirmation of the Voisin claim through the above cited act released the United States of any claim to said lands. This Bureau has no jurisdiction over land after they have been patented and/or confirmed; title thereto vests in the patentee. Thereafter, the lands become privately owned and subject to the laws of the State, and all transactions that subsequently affect title to those lands are recorded in the local county records.

58.

Despite this statement in 1990, the Bureau of Land Management's Office of Cadastral Survey claimed six years later that it was unable to locate a reference to Jean Voisin's Claim No. 50 in the survey field notes of G. F. Connely and, thus, did not believe the claim covered Last Island. The Office of Cadastral Survey also claimed that Last Island could not be the land identified in the 1788 Order of Survey since it only referenced a 'small island.' However, the term "small" is obviously subjective, especially because when Governor Miro wrote the Order of Survey in 1788, he had recently returned from a visit to Cuba which is a rather large island in comparison to l'Isle Longue.

59.

On April 10, 1998 – after further inquiries from Voisin family members and various congressional representatives – Janet A. Goodwin, a Field Solicitor from the Division of Resources, Planning, Use and Protection of the United States Department of the Interior, produced an analysis of the Private Land Claim of Jean Voisin for Last Island, Louisiana. In her analysis, Ms. Goodwin reviewed many of the same facts set forth above. Although Ms. Goodwin did not reach a conclusion as to the validity of the claim, she did agree that the Voisins had "some very compelling evidence" and that the present-day Last Island is one and the same as the Long Island identified in the 1788 Order of Survey:

> If [the Voisin family] can prove Voisin and his family had a settlement on Last Island in the 1800's, the link between Long Island and Last Island would be strengthened. In fact, if they can prove habitation on the island at all by Voisin, it bolsters their story - it is unlikely that Voisin was granted a particular island and then settled on the wrong one.

60.

In her report, Ms. Goodwin also recognized the significance of Wine Island fronting Last Island, as it was exactly described in the 1788 Order of Survey:

> The most serious defect in the [Bureau of Land Management's] position, is the existence of Wine Island, both in 1788 and 200+ years later. Today, Wine Island is on one side of Last Island. If the BLM ever needs to defend its position that Last Island is not the island granted to Voisin, it will need to explain away Wine Island, or locate another Wine Island in the present-day Barrataria [sic] Bay . . .

62.

Although Ms. Goodwin did not present a final conclusion, she stated that she wanted to "conduct further research," but that she would need additional funds and assistance from the Bureau of Land Management staff.

63.

Because of differing views within the Bureau of Land Management, certain Senate and Congressional members released a statement in the United States Congressional Record on September 29, 2000, encouraging further investigation into the Voisin claim:

> The managers encourage the [Bureau of Land Management] to conduct a full investigation, including review of documents and evidence provided by the Voisin family to determine if the government transferred the ownership of Last Island, Louisiana while the property was owned by ancestors of the Voisin family. Should the BLM determine that the property was transferred inappropriately, the report shall include recommendations for the resolution of this issue.

146 Cong. Rec. H 8472.

64.

Instead of complying with Congress's statement or even providing Ms. Goodwin with the funds and staff she requested, another agent from the Bureau of Land Management issued a report six months later, in April 2001, that merely attached the prior findings by the Office of Cadastral Survey which were based on the flawed surveys prepared by G. F. Connely in the late 1830's.

65.

Upon information and belief, no further action has been taken by any federal or state agency.

To date, the issue of ownership of Last Island remains open, as evidenced by these conflicting federal government reports and the Congressional Statement encouraging further investigation.

The United States' failure to resolve this dispute for over 150 years should result in the equitable tolling of the statute of limitations set forth in 28 U.S.C. § 2501. Although used sparingly, this Court has held that equitable tolling is available under certain limited circumstances. For instance, in a patent infringement suit, this Court found that the six-year limitations period in 28 U.S.C. § 2501 should be tolled if the limitations period in the statute underlying the cause of action contemplated such tolling. *See Dow Chemical Co. v. United States*, 32 Fed.Cl. 11, 20 (1994), *affirmed in part, reversed in part on other grounds*, 226 F.3d 1334 (Fed. Cir. 2000). Referencing the six-year period for patent infringements in 35 U.S.C. § 286, this Court held that the limitations period in 28 U.S.C . § 2501 should be tolled from the time that "the government receives 'a written claim for compensation' by the claimant that is sufficiently detailed so as to provide the government a realistic opportunity to consider and settle the claim" until the government makes a final decision on a patent infringement. *Id.* In this matter, the government has received repeated claims for compensation and to otherwise resolve this land title dispute, but it has failed to take any final action for more than 150 years.

Similarly, the Supreme Court has held that despite the limitations period for land patent annulment actions set forth in 28 U.S.C. § 1166, no one is precluded from asserting or enforcing an interest adverse to that of the patentee, including an action to recover the value of lands fraudulently procured by a patent or to place those lands into a constructive trust, after the expiration of the six-year period. In the landmark case on this issue, *United States v. Whited & Wheless*, 246 U.S. 552, 561, 38 S.Ct. 367, 62 L.Ed. 879 (1918), the Supreme Court stated:

> The statute of limitations did not create the right of action in the Government or either of the remedies for enforcing that right. **It relates to the remedy, and in terms**

> **applies only to one remedy, that for annulling the patent**. The right of the Government, asserted in this case, really springs from the fraudulent obtaining of the patent, not from the patent itself, and **this right continues until it is satisfied or cut off by statute**, and therefore, to say that the barring of one remedy smothers the right to pursue the other, is mere assertion, and does not advance us toward a conclusion as to the effect, if any, which such bar may have upon the other remedy . . .

(Emphasis added).

This reasoning has been confirmed in many holdings since 1918. For instance in *Capron v. Van Horn*, 258 P. 77, 81 (Cal. 1927), the Supreme Court of California relied upon the *Whited & Wheless* case, finding:

> It follows from what has been said that the expiration of the six-year period prescribed in the act of March 3, 1891, may be availed of by a patentee under the federal government only in defense of an action brought by said government to annul the patent. It does not constitute a bar to the assertion and enforcement of an adverse equitable interest in and to the land so patented.

More recently, in *Izaak Walton League of America v. St. Clair*, 497 F.2d 849, 854 (8th Cir. 1974), the Eighth Circuit Court of Appeals reaffirmed this legal standard when it stated:

> [A]lthough 28 U.S.C. § 1166 does bar an action to *annul* patents, it has been found not to bar actions to impose a constructive trust upon lands fraudulently obtained [citations omitted], or to recover the value of the lands fraudulently obtained [citations omitted].

Since plaintiffs seek to recover the value of this land that was fraudulently obtained, the Court of Federal Claims' limitation period should not be used to preclude relief that would otherwise be available to plaintiffs.

Alternatively, plaintiffs submit that the United States' failure to return this property to its rightful owners represents a continuing wrong, to which the statute-of-limitations period should not apply. The Ninth Circuit Court of Appeals has defined the "continuing wrong" doctrine as involving

"repeated instances or continuing acts of the same nature, as for instance, repeated acts of sexual harassment or repeated discriminatory employment practices." *Sisseton-Wahpeton Sioux Tribe v. United States*, 895 F.2d 588, 597 (9th Cir.), *cert. denied*, 498 U.S. 824 (1990). Here, the United States' continued and repeated refusal to recognize the Voisin family as the rightful owners of Land Island should be considered a continuing wrong warranting the equitable tolling of the statute of limitations period.

## III. ALTERNATIVELY, PLAINTIFFS' DECLARATORY RELIEF CLAIM IS NOT WITHIN THE JURISDICTION OF THIS COURT AND SHOULD BE DISMISSED WITHOUT PREJUDICE.

When plaintiffs filed their original lawsuit in Louisiana federal court, they simply sought a declaratory judgment against the United States that it breached its duty of trust by illegally conveying Last Island away from Jean Voisin and his descendants and that Jean Voisin's descendants were entitled to possession of the property. In their original Class Action Complaint, plaintiffs also set forth an alternative claim for damages against the United States due to an unlawful and uncompensated taking only "to the extent Last Island is not judicially returned to Plaintiffs."

Unfortunately, this has been the case of the tail wagging the dog ever since then. In fact, despite pleading the unlawful taking claim as an alternative cause of action, as expressly permitted by Federal Rule of Civil Procedure 8(a), the Louisiana federal district court found that by simply stating this cause of action, plaintiffs had invoked the exclusive jurisdiction of this Court under 28 U.S.C. § 1491. When plaintiffs' asked the court to reconsider based on the pending declaratory judgment claim, which this Court generally cannot consider, Judge Lemmon cited the case of *Dwen v. United States*, 62 Fed.Cl. 76, 81 (Ct. Fed. Cl. 2004) for the proposition that this Court has the

authority to issue a declaratory judgment that "is tied and subordinate to a monetary award." *Voisin v. United States*, 2006 U.S.Dist.LEXIS 62694, 3-4 (E.D.La. 2006)

Notwithstanding, it is well established, and the United States does not disagree, that this Court does not have jurisdiction or authority to issue declaratory judgments. *See United States v. King*, 395 U.S. 1 (1969) (citing decisions dating back to 1868, 13 years after the Court of Claims was established by Congress). In *U.S. v. King*, the Supreme Court reiterated a decision from 1868, in which the Court stated: "[T]he only judgments which the Court of Claims (is) authorized to render against the government ... are judgments for money found due from the government to the petitioner." *United States v. Alire*, 73 U.S. 573, 575-76 (1868). The Court acknowledged in *King* that the passage of the Tucker Act in 1887 "had not expanded that jurisdiction to equitable matters." 395 U.S. at 3. After rebutting the argument that this Court received such authority under the Declaratory Judgment Act of 1934 by citing several decisions from the Court of Federal Claims itself, the Court reconfirmed that declaratory judgments could not be heard or decided in this Court:

> There is not a single indication in the Declaratory Judgment Act or its history that Congress, in passing the Act, intended to give the Court of Claims an expanded jurisdiction that had been denied to it for nearly a century. In the absence of an express grant of jurisdiction from Congress, we decline to assume that the Court of Claims has been given the authority to issue declaratory judgments.

*Id.* at 5. Although the Court of Claims' jurisdiction was subsequently expanded to include declaratory relief in bid-dispute cases for government contracts, pursuant to the Contract Disputes Act of 1978, 41 U.S.C. §§ 601-13, the Court of Claims still cannot render independent declaratory relief. *See Amoco Production Co. v. Hodel*, 815 F.2d 352, 360 (5th Cir. 1987) ("Despite the broad language of

section 1491, not every claim invoking the Constitution, a federal statute or a regulation is cognizable under the Tucker Act; the claim must be one against the United States for money").

If this Court determines that plaintiffs' claim for damages against the United States is time barred, plaintiffs request that it dismiss their claim for declaratory relief without prejudice so that they can pursue this matter in an appropriate forum.

## IV. CONCLUSION

It is well settled that a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction "should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Ramming v. United States,* 281 F.3d 158, 161 (5th Cir. 2001). Furthermore, when considering a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), "the court must accept as true the complaint's undisputed factual allegations and construe the facts in the light most favorable to plaintiff." *Figuera v. United States*, 57 Fed.Cl. 488, 492 (2003).

As discussed above, the United States' failure to make a final determination about the title and ownership of this property, despite several investigations and inquiries spanning the last 150 years, should result in the equitable tolling of the six-year statute of limitations set forth in 28 U.S.C. § 2501. Additionally, the United States' continued and repeated refusal to recognize the Voisin family as the rightful owners of Land Island should be considered a continuing wrong, again warranting the equitable tolling of the statute-of-limitations period. Thus, for the reasons set forth herein, the United States' Motion to Dismiss should be denied in its entirety. Alternatively, to the extent this Court holds that plaintiffs' claim for damages against the United States is improper, then plaintiffs' claim

for declaratory relief should be dismissed without prejudice, so plaintiffs can pursue it in an appropriate forum.

Respectfully submitted,

/s/ Gladstone N. Jones, III

**GLADSTONE N. JONES, III**
**LYNN E. SWANSON**
**JONES, VERRAS & FREIBERG, L.L.C.**
601 Poydras Street, Suite 2655
New Orleans, Louisiana 70130
Telephone: (504) 523-2500
Facsimile: (504) 523-2508
E-mail: gjones@lawjvf.com

**Counsel for Plaintiffs**
**Of Counsel:**

**ANDREW L. KRAMER**
**ELKINS, P.L.C.**
201 St. Charles Avenue, Suite 4400
New Orleans, Louisiana 70170
Telephone: (504) 529-3600
Facsimile: (504) 529-7163
E-mail: akramer@elkinsplc.com

**FRANK C. DUDENHEFER, JR.**
**THE DUDENHEFER LAW FIRM, L.L.C.**
601 Poydras Street, Suite 2655
New Orleans, Louisiana 70130
Telephone: (504) 525-2553
Facsimile: (504) 523-2508
E-mail: FCDlaw@aol.com

**CERTIFICATE OF SERVICE**

______The undersigned hereby certifies that a copy of the foregoing Plaintiffs' Memorandum in Opposition to Defendant's Motion to Dismiss has been served on Defendant on this 17th day of August, 2007, by electronic transmission, upon its counsel of record:

HelenAnne Listerman, Esq.
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington, D.C. 20044-0663

/s/ Gladstone N. Jones, III