# In the United States Court of Federal Claims

No. 07-54 L

(Filed January 4, 2008)

```
* * * * * * * * * * * * *  *    *
```
JAMES VOISIN, *et al.*,    *  Takings Claim; Declaratory
            *  Judgment Claim; Equitable
     *Plaintiffs*, *  Tolling of 28 U.S.C. § 2501
            *  (2000); RCFC 12(b)(1); RCFC
    v.       *  12(b)(6); No Subject Matter
            *  Jurisdiction; Continuing Wrong
THE UNITED STATES,   *  Doctrine; Continuing Claims
            *  Doctrine.
     *Defendant*. *

```
* * * * * * * * * * * * *  *    *
```

 *Gladstone N. Jones, III*, with whom was *Lynn E. Swanson*, New Orleans, LA, for plaintiffs. *Andrew L. Kramer* and *Frank C. Dudenhefer, Jr.*, New Orleans, LA, of counsel.

 *HelenAnne Listerman*, United States Department of Justice, with whom was *Ronald J. Tenpas*, Acting Assistant Attorney General, Washington, D.C., for defendant.

---

**OPINION**

---

**Bush**, *Judge*.

 This matter is before the court on defendant's motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) and, in the alternative, under Rule 12(b)(6) of the United States Court of Federal Claims (RCFC). In this case, plaintiffs allege that the government has appropriated Last Island, an island off the

coast of Louisiana, without just compensation.[1]  Plaintiffs, however, did not file their takings claim within the six-year statute of limitations set forth in 28 U.S.C. § 2501 (2000).  For the reasons set forth herein, the court concludes that jurisdiction over this matter is absent.  Defendant's motion to dismiss is granted pursuant to RCFC 12(b)(1).

## BACKGROUND

## I.    FACTUAL BACKGROUND[2]

On or about October 20, 1788, Don Estevan Miro, the Governor of the Spanish Province of Louisiana, issued an "Order of Survey" which granted Jean Voisin the exclusive right to the property known as Last Island.  The Order of Survey, translated into English stated:

> To Jean Voisin, a small island, commonly known as
> *l'Isle Longue* (Long Island), situated in the Lake of
> Barataria, adjoining (or contiguous to) on one side to the
> *Ultima Isla* (Last Island), and on the other, fronting the
> island called *El Vino* (Wine Island).

Compl. ¶ 14.

On or about October 1, 1800, Spain relinquished the province of Louisiana to France in accordance with the Treaty of San Ildefonso.  *Id*. ¶ 16.  Two and a half years later, on April 30, 1803, France sold Louisiana to the United States in accordance with a treaty commonly known as the "Louisiana Purchase."  *Id*. ¶ 17. Pursuant to the Louisiana Purchase, all public property within Louisiana became part of the United States public domain, and all inhabitants were allowed to maintain private ownership of their property rights without interference from the United States government.  Thus, Jean Voisin continued to live and work

---

[1]/ The disputed property has been referred to as l'Isle Longue (Long Island) and Isles Dernieres (Last Island).  For the purposes of this motion, and because the parties have elected to do so, the court will refer to the disputed property as Last Island.

[2]/ The facts recited here are taken from plaintiffs' pleadings and are not disputed by defendant for the purposes of resolving its motion to dismiss for lack of subject matter jurisdiction.

peacefully on Last Island until his death on August 10, 1820.[3]

Title disputes over Last Island began in the early 1830s, almost ten years after Jean Voisin's death.  Jean Voisin died at the age of 70 leaving behind a daughter, Catherine Voisin, and a son, Jean Joseph Voisin, who lived and maintained Last Island until his death in 1874.

One of the first events that triggered the title dispute regarding Last Island was the July 4, 1832 Act, entitled "An Act for the final adjustment of the claims to lands in the south-central land district of the State of Louisiana."  Compl. ¶ 29. Congress passed the Act, permitting all individuals who wished to confirm their claims to titles of certain properties in Louisiana, to "present their claims within a specified time period together with the written evidence and other testimony in support of the same, to the Register and Receiver of the federal land office at New Orleans."  *Id.*  Upon receipt of claims, the Register and Receiver were required to submit a report of pending claims to the Secretary of the Treasury.

To confirm the rightful ownership of Last Island, in July 1833, Jean Joseph Voisin submitted his family's claim and supporting evidence to the federal land office in New Orleans.  Compl. ¶ 31.  The Register and Receiver's initial report identified Jean Joseph Voisin's title to Last Island as a Class B, No. 50 "incomplete" title.  *Id.* ¶ 33.  However, the "supplementary" act adopted by Congress on March 3, 1835, confirmed Jean Joseph Voisin's claim to Last Island "against any claim of the United States, with no requirement for a subsequent survey or patent."  *Id.* ¶ 36.

The United States government determined that it had need of a survey of certain areas of southern Louisiana, including the area surrounding Last Island. Compl. ¶ 37.  On October 13, 1837, the government entered into a contract with Mr. Gilmore F. Connely to conduct such a survey which he completed in or about February 1838.  The Surveyor General of Louisiana approved the survey, although

---

[3]/ Pursuant to 2 Stat. 701, 703, dated April 8, 1812, Louisiana became part of the Union as the 18th state "on equal footing with the original states, in all respects whatsoever."  Compl. ¶ 27.  Specifically, the Act referred to Louisiana as "bounded by the said gulf [of Mexico] . . . including all islands within three leagues of the coast."  *Id.*  From April 1812, all Louisiana property owners were "protected under the United States Constitution, as well as those guarantees set forth in the Louisiana Purchase."  *Id.*

the survey failed to refer to the March 3, 1835 congressional confirmation of Last Island to Jean Joseph Voisin.

In or around 1847, notwithstanding congressional confirmation of Jean Joseph Voisin's claim to Last Island, the United States Land Office in New Orleans began issuing patents for various parts of Last Island to individuals who wanted to build summer residences on the Gulf of Mexico. Compl. ¶ 38. Soon thereafter, Congress passed the Swamp Lands Grant Act of March 2, 1849, which was intended "to aid the State of Louisiana in draining the Swamp Lands therein." *Id*. ¶ 54. The enactment of the Swamp Lands Grant Act was not meant to affect privately-held property and thus, it did not extinguish Jean Joseph Voisin's property rights to Last Island. *Id*. A few years later, Congress expressly provided in its Act of March 3, 1857, 11 Stat. 251, that patents issued under the Swamp Lands Grant Act were for properties that "shall remain vacant and unappropriated, and not interfered with by an actual settlement under any existing law of the United States." *Id*. ¶ 55. Nonetheless, the State of Louisiana "began taking over control of the majority of Last Island pursuant to the Swamp Lands Grant Act, and then sold or donated portions of the island to various individuals." *Id*. ¶ 56. Most of the island was sold to the predecessor of Louisiana Land & Exploration Company (LL&E), which extracted significant amounts of minerals from beneath the surface for over 60 years.[4]

As a result of these interferences with his property, Jean Joseph Voisin contacted the General Land Office in Washington, D.C. to challenge the issuance of those patents. Compl. ¶ 39. In 1850, J. Butterfield, Commissioner of the General Land Office, corresponded with Robert W. Boyd, Louisiana Surveyor General, about Jean Joseph Voisin's claim to Last Island. *Id*. In response to Mr. Butterfield's inquiry, Mr. Boyd wrote in a letter dated May 11, 1850, that Mr. Voisin's claim, classified as Class B, No. 50, "has not been surveyed, nor has any order for its location been issued by this office. The only townships adjoining Lake Barataria which have had surveys are T.19 R24 & 25E, and upon these no islands of the name of 'L'Isle Longue' appears to have been surveyed." *Id*.

More resistance against Mr. Voisin's claim to Last Island came from Charles

---

[4] In 1997, LL&E transferred Last Island back to the State of Louisiana, while maintaining control of 50% of the subsurface mineral rights. Compl. ¶ 1.

Fitz, Register for the General Land Office in New Orleans, who claimed in his September 5, 1850 letter to Mr. Butterfield, that the patents were issued because Mr. Voisin's claim was "frivolous."  Compl. ¶ 41.  According to Mr. Fitz, "the area now known as Last Island is too big to be the "small" island described in the Order of Survey, and that the Order of Survey grants an island bounded on one side by 'Last Island' and so it cannot mean Last Island itself."  *Id.*  Although Mr. Fitz received and eventually forwarded to Mr. Butterfield three affidavits that supported Mr. Voisin's claim, no decision was made to settle the claim.  Jean Joseph Voisin's attorney, F.C. Laville, continued to send letters to Mr. Butterfield and other government officials throughout 1852 and 1853, requesting a resolution of Mr. Voisin's claim.  None was issued.  Finally, on October 10, 1853, John Wilson, the new Commissioner of the General Land Office, ordered the Register and Receiver in New Orleans to "make a final examination of the matter after due notice to all the parties interested and to report the result for definitive action of this office."  *Id.* ¶ 44.

Beginning in January and February 1854, the Register and Receiver in New Orleans deposed four witnesses regarding Mr. Voisin's claim to Last Island. Compl. ¶ 45.  Simultaneously, a Mr. James N. Wafford filed suit against Jean Joseph Voisin in Louisiana state court seeking to determine title to Last Island. Mr. Voisin responded by countersuing Mr. Wafford and filing suit against various other alleged patent holders claiming similar title to Last Island.  During the next two years, Mr. Wafford and Mr. Voisin aggressively pursued their lawsuits.  Other plaintiffs who claimed title to Last Island also continued to pursue their claims by writing letters to the General Land Office, and requesting that a final decision be rendered on the matter.  However, these lawsuits came to a sudden halt on August 10, 1856 when Louisiana was faced with a devastating hurricane.  The hurricane killed an estimated 320 people, including several of the plaintiffs in the lawsuits, and Jean Joseph Voisin's wife and daughter.  Jean Joseph Voisin and his two sons, Joseph and Leonard, survived.  However, most of the buildings on Last Island were destroyed and parts of the island were washed away.  As a result of the hurricane, the lawsuits did not proceed further, and the tortured quest to determine ownership of Jean Voisin's island came to an abrupt halt with no final determination ever having been reached concerning the ownership of Last Island.  *Id.* ¶ 53.

Over a hundred years passed before any members of the Voisin family began to inquire again about any claim to Last Island in the late 1980s.  Compl. ¶ 57.  On several occasions, the Voisins corresponded with the Bureau of Land Management

concerning their claim to Last Island, but no favorable resolution was ever forthcoming.  The Voisins persevered with their inquiries, and finally got the attention of Ms. Janet A. Goodwin, a Field Solicitor from the Division of Resources and Planning, Use and Protection of the United States Department of the Interior.  Ms. Goodwin reviewed the facts surrounding the Voisins' claim to Last Island, and prepared a thorough analysis of the claim.   Although Ms. Goodwin's analysis did not provide a final conclusion to the title dispute of Last Island, she agreed that the Voisins had "some very compelling evidence."  *Id*. ¶ 59.  Therefore, in her analysis, Ms. Goodwin stated that she would "need additional funds and assistance from the Bureau of Land Management staff" to "conduct further research."[5]  *Id*. ¶ 62.

The Bureau of Land Management did not comply with Ms. Goodwin's recommendation, and instead, issued a report in April 2001 that merely attached the allegedly flawed survey prepared by Mr. Connely in the late 1830s.  Compl. ¶ 64.  Plaintiffs state that to the best of their knowledge, no final determination has ever been made by any federal or state agency regarding the ownership of Last Island.

## II.    PROCEDURAL HISTORY[6]

Plaintiffs' original class action complaint was filed in the United States District Court for the Eastern District of Louisiana on April 25, 2005.  (E.D. La. Compl.).  The original complaint named the United States of America, the State of

---

[5]/  The Bureau of Land Management staff held different views concerning the title dispute of Last Island.  In response, a few members of Congress and the Senate released a statement in the United States Congressional Record on September 29, 2000, supporting Ms. Goodwin's recommendation for further research:  "The managers encourage the [Bureau of Land Management] to conduct a full investigation, including review of documents and evidence provided by the Voisin family to determine if the government transferred the ownership of Last Island, Louisiana while the property was owned by ancestors of the Voisin family.  Should the BLM determine that the property was transferred inappropriately, the report shall include recommendations for the resolution of this issue."  Compl. ¶ 63.

[6]/  Many of the facts recited here are taken from the parties' pleadings and motions filed in the United States District Court for the Eastern District of Louisiana, Civil Docket No. 2:05-cv-01595-MVL-SS.

Louisiana, and LL&E as defendants.[7]  In the original class action complaint, the Voisins sought a declaratory judgment pursuant to Rule 57 of the Federal Rules of Civil Procedure (FRCP) and 28 U.S.C. § 2201 (2000), asking the court to determine that:  (1) "any or all acts conveying, granting, or transferring title or patents to l'Isle Longue (also known as Long Island, Last Island, or Isles Dernieres) to anyone other than Jean Voisin or his descendants are null and void," and (2) "the direct descendants of Jean Voisin are entitled to exclusive possession of, and full dominion and power over, the lands, minerals, and other natural resources subject to the 1788 Order of Survey from the Spanish government to Jean Voisin."  E.D. La. Compl. ¶ 85.

Additionally, the Voisins brought a cause of action in conversion and enrichment without cause against LL&E.  E.D. La. Compl. ¶¶ 86, 93.  Plaintiffs alleged that LL&E had extracted a significant amount of natural resources from Last Island, and these resources "rightfully belonged to Jean Voisin and his descendants" pursuant "to the 1788 Order of Survey and March 3, 1835 Congressional confirmation."  *Id.* ¶¶ 88-92.  The Voisins also alleged that as a result of LL&E's actions, LL&E has been unjustly enriched to the detriment of plaintiffs.  The Voisins claimed that LL&E was responsible for the economic losses sustained by plaintiffs, and thus, plaintiffs should be awarded compensatory damages.

As an alternative cause of action, the Voisins brought a takings claim against the United States.  E.D. La. Compl. ¶ 98.  Plaintiffs alleged that to the extent that the United States does not return Last Island to the plaintiffs, "the United States' exercise of its power of eminent domain over this property constitutes a private taking."  *Id.* ¶ 99.  Plaintiffs further asserted that the United States' failure to compensate plaintiffs "for this taking" was "in violation of the Fifth Amendment to the United States Constitution."  *Id.* ¶ 101.  Plaintiffs requested the district court to award damages against the United States for the significant economic losses they had incurred as a result of the United States' actions.

---

[7]/  According to plaintiffs' original class action complaint, LL&E is a Texas corporation with its place of principal business in Houma, Louisiana.  E.D. La. Compl. ¶ 5.  The complaint also alleges that, upon information and belief, LL&E was acquired in 1997 by Burlington Resources, Inc., a Delaware corporation with its principal place of business in Houston, Texas.  LL&E is now a subsidiary of Burlington Resources, Inc.

On March 29, 2006, the district court dismissed plaintiffs' claims against the State of Louisiana and transferred plaintiffs' claims against the United States to the United States Court of Federal Claims pursuant to 28 U.S.C. § 1631 (2000).  *See* Order of March 29, 2006, at 2-6.

Pursuant to the district court's Order of March 29, 2006, plaintiffs filed an amended and transferred action complaint in this court on April 10, 2007.[8]  In their amended complaint, plaintiffs seek a declaratory judgment against the United States, finding that:  (1) all conveyances and transfers of Last Island to persons "other than Jean Voisin or his descendants are null and void," and (2) "the direct descendants of Jean Voisin" have complete and absolute ownership of "the lands, minerals, and other natural resources subject to the 1788 Order of Survey from the Spanish government to Jean Voisin."  Compl. ¶ 79.  Plaintiffs also assert a takings claim against the United States for the unlawful taking of their property without just compensation.

Defendant has moved to dismiss plaintiffs' complaint on the basis that plaintiffs' takings claim is barred by the applicable six-year statute of limitations, 28 U.S.C. § 2501.  Additionally, defendant asserts that this court lacks  jurisdiction to entertain plaintiffs' declaratory judgment request.

## DISCUSSION

## I.      Jurisdiction

The Tucker Act, 28 U.S.C. § 1491(a)(1) (2000), authorizes the United States Court of Federal Claims to render judgment and money damages on any claim against the United States Constitution, an Act of Congress, a regulation of an executive department, or an express or implied contract with the United States.  *See United States v. Testan*, 424 U.S. 392, 397-98 (1976).  The Tucker Act, however, "does not create any substantive right enforceable against the United States for money damages.  The Court of Claims has recognized that the Act merely confers jurisdiction upon it whenever the substantive right exists."  *Id*. at 398 (citation omitted).  Therefore, a plaintiff must identify and plead an independent contractual

---

[8]/ Plaintiffs filed the amended and transferred class action complaint in accordance with RCFC 3.1(a).

relationship, constitutional provision, federal statute, and/or executive agency regulation that provides a substantive right to money damages in order for this court to have jurisdiction. *See Khan v. United States*, 201 F.3d 1375, 1377 (Fed. Cir. 2000).

In the present case, plaintiffs' alleged taking arises under the "just compensation" guarantee within the Fifth Amendment to the Constitution. *See Nicholson v. United States*, 77 Fed. Cl. 605, 613 (2007). For purposes of the Tucker Act, a takings claim against the United States is "founded upon the Constitution" and is within the jurisdiction of the United States Court of Federal Claims. *United States v. Causby*, 328 U.S. 256, 267 (1946); *Murray v. United States*, 817 F.2d 1580, 1583 (Fed. Cir. 1987) (stating that the Claims Court has jurisdiction over a takings claim). Accordingly, this court has jurisdiction to entertain plaintiffs' takings claim, if timely filed.

The United States Court of Federal Claims only has jurisdiction if a complaint is filed within the applicable six-year statute of limitations period. *See* 28 U.S.C. § 2501. A plaintiff's failure to sue within the requisite six-year period precludes this court from hearing the claim. *See Catellus Dev. Corp. v. United States*, 31 Fed. Cl. 399, 404 (1994) ("[A] failure to comply with the statute of limitations places the claim beyond the court's power to hear and decide."). In the instant case, the government asserts that plaintiffs' takings claim was not filed within the applicable six-year period, and thus should be dismissed for lack of subject matter jurisdiction. Plaintiffs respond that, given the circumstances of their case, 28 U.S.C. § 2501 should be equitably tolled. Therefore, the threshold question presented by defendant's motion is whether 28 U.S.C. § 2501 is subject to equitable tolling in this case.

## II.   Standard of Review for a Motion to Dismiss for Lack of Subject Matter Jurisdiction

In rendering a decision on a motion to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1), this court must presume all undisputed factual allegations to be true and construe all reasonable inferences in favor of the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other grounds by Harlow v. Fitzergerald*, 457 U.S. 800, 814-15 (1982); *Reynolds v.*

*Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed. Cir. 1988).[9]  However, plaintiff bears the burden of establishing subject matter jurisdiction, *Alder Terrace, Inc., v. United States*, 161 F.3d 1372, 1377 (Fed. Cir. 1998) (*citing McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936), and must do so by a preponderance of the evidence, *Reynolds*, 846 F.2d at 748.  If jurisdiction is found to be lacking, this court must dismiss the action.  RCFC 12(h)(3); *Forsgren v. United States*, 73 Fed. Cl. 135, 138 (2006).

## III.   Analysis

Defendant argues that plaintiffs' takings claim is time-barred pursuant to 28 U.S.C. § 2501.  Defendant asserts that based on the facts as alleged in the Voisins' complaint, plaintiffs' takings claim accrued no later than 1847.[10]  Despite the 1847 accrual date, plaintiffs filed their lawsuit in this court on April 10, 2007, more than 150 years after the accrual of the claim.  Thus, in view of this court's six-year statute of limitations, defendant concludes that plaintiffs' takings claim is time-barred.

To establish the accrual date of plaintiffs' takings claim, the government relies on the Voisins' complaint which alleges that in 1847, the United States Land Office in New Orleans began issuing patents for various parts of Last Island to individuals who wanted to build summer houses on the Gulf of Mexico.  Compl. ¶ 38.  Defendant contends that this action represented the "government's

---

[9]/  The Federal Circuit has established that the statute of limitations in 28 U.S.C. § 2501 is jurisdictional.  *John R. Sand & Gravel Co. v. United States*, 457 F.3d 1345, 1354-55 (Fed. Cir. 2006) ("[W]e are unwilling to disturb the well-settled law that section 2501 created a jurisdictional condition precedent for suit in the Court of Federal Claims, which may not be waived by the parties."), *cert. granted in relevant part*, 127 S. Ct. 2877 (May 29, 2007).  The Supreme Court granted certiorari in *John R. Sand & Gravel Co.*, and held oral argument on November 6, 2007.  The oral argument focused on whether § 2501 is jurisdictional.  Pending the Supreme Court's decision, *John R. Sand & Gravel Co.'s* holding that § 2501 is jurisdictional still binds this court.  Therefore, this court will dispose of this matter under RCFC 12(b)(1) rather than RCFC 12(b)(6).

[10]/  To determine whether a Fifth Amendment taking has occurred, the court must establish the following:  (1) whether the claimant had a valid property interest at the time of the taking, and (2) whether the "governmental action at issue amounted to a compensable taking of that property interest."  *People of Bikini v. United States*, 77 Fed. Cl. 744, 771 (2007) (citation omitted).

conveyance of title to portions of Last Island to other persons." Def.'s Mot. at 10.
Defendant asserts that the government's issuance of patents to portions of Last
Island to individuals other than the Voisins was "sufficient to put plaintiffs on
notice of their claim against the United States." *Id*. Defendant contends that even
if the 1847 governmental action had been insufficient to put plaintiffs on notice,
the subsequent action in March 1849 when the "the State of Louisiana began
taking over control of the majority of Last Island pursuant to the Swamp Lands
Grant Act, and then sold or donated portions of the island to various individuals"
would have necessarily alerted plaintiffs to their takings claim. *Id*. at 10 n.5.

The Voisins do not dispute the government's conclusion that the takings
claim accrued in 1847 or at the latest in March 1849. Instead, plaintiffs request
that the court apply equitable tolling to the six-year statute of limitations set forth
in 28 U.S.C. § 2501. Pls.' Opp. at 2. *See infra* for discussion of equitable tolling.

The court agrees with the government that plaintiffs' taking claim is time-
barred. Plaintiffs did not file suit within the applicable six-year statute of
limitations set forth in 28 U.S.C. § 2501. Section 2501 provides: "Every claim of
which the United States Court of Federal Claims has jurisdiction shall be barred
unless the petition is filed within six years after such claim first accrues." 28
U.S.C. § 2501. The Supreme Court and the United States Court of Appeals for the
Federal Circuit have established that § 2501 is a "jurisdictional requirement
attached by Congress as a condition of the government's waiver of sovereign
immunity and, as such, must be strictly construed." *Hopland Band of Pomo
Indians v. United States*, 855 F.2d 1573, 1577 (Fed. Cir. 1988); *see Soriano v.
United States*, 352 U.S. 270, 275-76 (1957). Because of the jurisdictional
requirement of § 2501, "[e]xceptions to the limitations and conditions upon which
the government consents to be sued are not to be implied." *Hopland Band of Pomo
Indians*, 855 F.2d at 1573 (citing *Soriano*, 352 U.S. at 276). A plaintiff bears the
burden of establishing jurisdiction within this court, "including compliance with
the six-year statute of limitations, and must do so by a preponderance of the
evidence." *Entines v. United States*, 39 Fed. Cl. 673, 678 (1997) (citing *Reynolds*,
846 F.2d at 748).

## A.    Accrual of the Takings Claim

It is well-settled that "[a] claim accrues when all events have occurred that
fix the alleged liability of the Government and entitle the plaintiff to institute an

action." *Alliance of Descendants of Tex. Land Grants v. United States*, 37 F.3d 1478, 1481 (Fed. Cir. 1993) (citing *Japanese War Notes Claimants Ass'n v. United States*, 373 F.2d 356, 358 (Ct. Cl. 1966)).  For a takings claim under the Fifth Amendment, the claim accrues when the government "by some specific action," takes "a private property interest for a public use without just compensation." *Id*. (citation omitted).

In the instant case, the government asserts that plaintiffs' takings claim accrued in 1847.  Def.'s Mot. at 10.  The government also asserts, in the alternative, that the takings claim, in any event, could have accrued no later than 1849 following the enactment of the Swamps Lands Grant Act.  Plaintiffs do not object to either accrual date.  Instead, plaintiffs focus upon their assertion that the six-year statute of limitations should be tolled.  *See infra.*  Given the chronology of events, the government is correct that the Voisins' takings claim is time-barred, in the first instance, because plaintiffs' cause of action accrued over 150 years prior to the filing of suit in this court.  *See Hair v. United States*, 52 Fed. Cl. 279, 284 (2002) (holding plaintiffs' takings claim to be time-barred because it accrued in 1952 with the ratification of the San Francisco Peace Treaty, and plaintiffs filed their complaint on September 12, 2001*); Alliance*, 37 F.3d at 1482 (holding that plaintiffs' takings claim was time-barred because the claim accrued in 1942 when a treaty went into effect, but plaintiffs did not file suit until 1989).  Accordingly, plaintiffs' takings claim is time-barred in the absence of some legal doctrine which might serve to protect or preserve plaintiffs' claim.

## B.    Equitable Tolling Does Not Apply

Plaintiffs have raised only one cognizable argument to forestall the dismissal of their takings claim.  Plaintiffs suggest that § 2501 should be equitably tolled in this case.  The court disagrees.

The United States Supreme Court in *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89 (1990), held that once the government has consented to be sued and has effectuated such a waiver, "the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States." *Id*. at 95-96.  The Supreme Court explained that this new "principle is likely to be a realistic assessment of legislative intent as well as a practically useful principle of interpretation." *Id*. at 95.  Seven years later, the Supreme Court ruled that this presumption can be rebutted if "there is good reason

to believe that Congress did not want the equitable tolling doctrine to apply." *United States v. Brockamp*, 519 U.S. 347, 350 (1997); *see, e.g.*, *United States v. Beggerly*, 524 U.S. 38, 48 (1997) (holding that the statute was not subject to equitable tolling because it already contained an explicit tolling provision which prevented the limitations period from running until the plaintiff "knew or should have known of the claim of the United States"); *Brice v. Sec'y of Health & Human Servs.*, 240 F.3d 1367, 1373 (Fed. Cir. 2001) (holding that the *Irwin* presumption was rebutted because the statute included a specific exception to the limitations period, and the limitations period was "part of a detailed statutory scheme which includes other strict deadlines"). *Compare Bailey v. West*, 160 F.3d 1360, 1365 (Fed. Cir. 1998) (*en banc*) (holding that equitable tolling was available because Congress did not draft the statute in a "highly detailed, technical, or repetitive manner," and it did not provide exceptions to its limitations period).

Initially, the Supreme Court discussed equitable tolling as pertaining to only two limited circumstances, namely, "where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *See Irwin*, 498 U.S. at 96. Not long thereafter, the Supreme Court in *Young v. United States*, 535 U.S. 43 (2002), acknowledged that equitable tolling "might be appropriate in other cases." *Id.* at 50; *see also Barrett v. Principi*, 363 F.3d 1316, 1318 (Fed. Cir. 2004) ("A careful study of Supreme Court precedent, as well as that of the regional circuits . . . reveals that equitable tolling is available in a variety of circumstances . . . ."). Based on the Supreme Court's rulings, the government asserts that here equitable tolling will only apply if a plaintiff shows "either that defendant has concealed its acts with the result that plaintiff was unaware of their existence or it must show that its injury was 'inherently unknowable' at the accrual date." *See Alliance*, 37 F.3d at 1482 (quoting *Japanese War Notes*, 373 F.2d at 359). Thus, the government's standard as articulated for tolling purposes is not in conflict with the Supreme Court's standard in *Irwin*.

Despite the Supreme Court's ruling that equitable tolling may generally be available for limitations periods in suits against the government, the Federal Circuit has not yet decided whether § 2501 in particular may be subject to equitable tolling. *Maclean v. United States*, 454 F.3d 1334, 1339 (Fed. Cir. 2006) (citing *Martinez v. United States*, 333 F.3d 1295, 1318 (Fed. Cir. 2003) (*en banc*)); *see also Wells v. United States*, 420 F.3d 1343, 1347 (Fed. Cir. 2005) ("We have yet to

13

determine whether Congress intended equitable tolling to apply to the limitations period in 28 U.S.C. § 2501."); *Frazer v. United States*, 288 F.3d 1347, 1352 (Fed. Cir. 2002) ("We have not previously determined whether § 2501 may ever be tolled . . . ."). However, even if it were held in the present case that equitable tolling is generally available under § 2501, the Voisins have not alleged sufficient facts to justify equitable tolling in this case.

The Voisins have raised three arguments in their opposition brief to support their request for the equitable tolling of § 2501.  The court will examine each of the three arguments, in turn, to determine whether any of these arguments are persuasive enough to justify plaintiffs' request for tolling § 2501.  Plaintiffs' three arguments are as follows:  (1) "the government has received repeated claims for compensation and to otherwise resolve this land title dispute, but it has failed to take any final action for more than 150 years"; (2) [s]ince plaintiffs seek to recover the value of this land that was fraudulently obtained, therefore the Court of Federal Claims' limitation period should not be used to preclude relief that would otherwise be available to plaintiffs"; and (3) "the United States' continued and repeated refusal to recognize the Voisin family as the rightful owners of La[st] Island should be considered a continuing wrong warranting the equitable tolling of the statute of limitations period."  Pls.' Opp. at 8-10.

### (1) The Government's Failure to Render a "Final Action" Does Not Equitably Toll the Statute of Limitations

### (a) Plaintiffs' Reliance on *Dow* is Misplaced

The Voisins argue that equitable tolling should be allowed in their case because of the government's failure to render a "final action" on the dispute for over 150 years.  Plaintiffs claim that they have made repeated requests for compensation, and a request for the resolution of the land dispute, but the government has refused to make a final determination on any of their requests.  To support this argument, plaintiffs cite to *Dow Chemical Co. v. United States*, 32 Fed. Cl. 11 (1994), *aff'd in part, rev'd in part on other grounds*, 226 F.3d 1334 (Fed. Cir. 2000), a patent infringement case.  Plaintiffs' main argument, in reliance upon *Dow*, is set forth as follows:

> Referencing the six-year period for patent infringements
> in 35 U.S.C. § 286, this Court held that the limitations

period in 28 U.S.C. § 2501 should be tolled from the time
that "the government receives 'a written claim for
compensation' by the claimant that is sufficiently
detailed as to provide the government a realistic
opportunity to consider and settle the claim" until the
government makes a final decision on a patent
infringement.

Pls.' Opp. at 8.

Plaintiffs reference the *Dow* case and assert that here, despite the claims for
compensation submitted to the government for over 150 years, defendant has failed
to take final action.  This failure to render a final action, plaintiffs assert,
necessarily tolls the statute of limitations in this case.   Defendant argues that
"plaintiffs' interpretation of *Dow*, however, is incorrect."  Def.'s Reply at 6.
Defendant explains that the patent infringement claim was governed by two
separate statutes of limitation:  28 U.S.C. § 2501 and 35 U.S.C. § 286 (2000).
Section 286 provides:

Except as otherwise provided by law, no recovery shall
be had for any infringement committed more than six
years prior to the filing of the complaint or counterclaim
for infringement in the action.

In the case of claims against the United States
Government for use of a patented invention, the period
before bringing suit, up to six years, between the date of
receipt of a written claim for compensation by the
department or agency of the Government having
authority to settle such claim, and the date of mailing by
the Government of a notice to the claimant that his claim
has been denied shall not be counted as part of the period
referred to in the preceding paragraph.

35 U.S.C. § 286.

Defendant further explains that the court in *Dow* held that the plaintiff's
patent infringement claim was not time-barred because of the tolling provision

15

contained in 35 U.S.C. § 286: "Tolling under 35 U.S.C. § 286 begins once the government receives 'a written claim for compensation' by the claimant that is sufficiently detailed so as provide the government a realistic opportunity to consider and settle the claim." 32 Fed. Cl. at 20. Defendant argues that the tolling provision in 35 U.S.C. § 286 stands independent of and has no application to 28 U.S.C. § 2501. Defendant concludes that in *Dow* "[t]he court quoted directly from 35 U.S.C. § 286, a statute that addresses only the time limitations for recovery of patent infringement claims. The court did *not* determine-either explicitly or implicitly-that such a tolling provision is part of or somehow applies to 28 U.S.C. § 2501." Def's Reply at 6-7.

The Voisins, on the other hand, contend that their situation is analogous to the scenario described in 35 U.S.C. § 286. Section 286 is drafted in a manner which provides a government agency with an opportunity to review a claim and correct its mistakes before defending the claim in court. *Custer v. United States*, 622 F.2d 554, 558 (Ct. Cl. 1980). In exchange, the patent owner's right to sue the government is tolled beyond the six-year statute of limitations. *Id*. Using § 286 as a platform for their argument, the Voisins assert that because the government has been in receipt of their claim, the statute of limitations should be tolled until the government considers the matter, and makes a final determination.

In this particular instance, the court agrees with defendant that the tolling provisions of 35 U.S.C. § 286 do not apply to 28 U.S.C. § 2501. More important to this case, however, and in order to more thoroughly understand the overall effect of *Dow* with respect to the statute of limitations issue, it is necessary to look beyond the trial court decision cited by plaintiffs and to examine the Federal Circuit opinion in that case. *See Dow Chem. Co. v. United States*, 226 F.3d 1334 (Fed. Cir. 2000). The Federal Circuit decision shows that the real focus of the circuit court with regard to the limitations period was on the "accrual" of the plaintiff's claim rather than on the "tolling" of the claim. *Id*. at 1347. The Federal Circuit held that the plaintiff's claim was not time-barred by 28 U.S.C. § 2501 because the claim had accrued in November 1978, and the plaintiff filed suit on January 17, 1983, only five years later. The Federal Circuit did not address tolling in that case because the claim was timely filed. *Id*. Therefore, plaintiffs' reliance on *Dow* is misplaced, and it does not support their argument for the equitable tolling of § 2501.

**(b)     A Takings Claim Accrues on the Date of the Actual Taking of the Property**

Plaintiffs essentially argue that a takings claim does not accrue until after the government has refused to pay just compensation and has failed to render a final decision on the matter. The law is well-settled in this area, however, that a Fifth Amendment takings claim accrues "on the date that the United States takes a private property interest for a public use without just compensation." *Entines*, 39 Fed. Cl. at 679 (citing *Alliance*, 37 F.3d at 1481). The Voisins knew in 1847 that the government had begun issuing patents to portions of Last Island. The Voisins also knew that the government had sold parts of Last Island after the enactment of the Swamps Lands Grant Act in 1849. In fact, when the Voisins discovered that the government had sold parts of Last Island, they contacted the General Land Office in 1850 to dispute the matter. The Voisins had more than sufficient notice of their takings claim, but they slumbered on their rights and failed to file their claim within the six-year limitations period. Now, over 150 years later, today's plaintiffs request that this court overlook that delay and toll § 2501. "[E]quity aids the vigilant, not those who slumber on their rights . . . ," *Cornetta v. United States*, 851 F.2d 1372, 1375 (Fed. Cir. 1988), and the court therefore cannot extend the limitations period because of plaintiffs' lack of diligence in bringing their claim within the appropriate time constraints.

This same "final action" argument was also raised by the plaintiff in *Steel Improvement & Forge Co. v. United States*, 355 F.2d 627 (Ct. Cl. 1966). In that case, the plaintiff argued that the six-year statute of limitations did not begin to run on its contract claim "until the claim had been denied by the Government." The plaintiff asserted the same argument for its takings claim. *Id*. at 630. The court held:

> Plaintiff's Fifth Amendment taking theory would likewise be barred by the statute of limitations. It is axiomatic that a cause of action for an unconstitutional taking accrues at the time the taking occurs. Assuming that the Government unconstitutionally took possession of plaintiff's property, such taking was accomplished when the goods were shipped to defendant in October 1954–more than six years prior to the filing of the petition in this case on December 29, 1962.

*Id*. at 631. *See also Hair*, 52 Fed. Cl. at 282 (rejecting plaintiffs' argument that a

Fifth Amendment takings claim accrues when the government states that it will not pay just compensation).

In light of the binding caselaw, the court cannot toll the statute of limitations set forth in § 2501 on the ground that plaintiffs were waiting for the government to render a final decision and pay just compensation on the title claim for Last Island. The Voisins waited over 150 years before filing suit in this court.  That is an inordinate period of time for a claim that should have been filed within six years from the date of accrual in the 19th century.  *See* 28 U.S.C. § 2501.

### (c)    Neither of the Two Equitable Tolling Circumstances Apply

Plaintiffs' "final action" argument does not fit into either of the two overall categories of circumstances which might permit this court to toll the statute of limitations, namely, (1) when the government has concealed material facts, or (2) when a plaintiff's takings claim was "inherently unknowable at the accrual date." *See Alliance*, 37 F.3d at 1482.

First, the Voisins' "final action" argument does not fall within the exception that the government concealed material facts regarding the taking of Last Island. The Voisins knew in 1847 that the government had issued patents to certain portions of Last Island to the general public.  The Voisins knew that the government had sold portions of Last Island under the Swamp Lands Grant Act of 1849.  The Voisins also knew that individuals who had purchased from the government were building summer houses on Last Island.  The government did not conceal any of these facts.  As a result of the government's actions in 1847, Jean Joseph Voisin contacted the General Land Office in 1850 to report these disturbances on his land.  If Jean Joseph Voisin had not been aware of the government's intrusions, Mr. Voisin would not have challenged these actions before the General Land Office.  In short, the Voisins have produced no evidence to suggest that the government concealed, or even attempted to conceal material facts of the alleged taking.[11]

---

[11]/  A detailed discussion of whether the government concealed material facts of the taking from plaintiffs can be found *infra*.

Second, the Voisins have not been able to plead facts that bring them within the "inherently unknowable" exception of the equitable tolling doctrine.  An "inherently unknowable" claim is defined as "that which is unknowable by its very essence, *i.e.*, its existence at the critical moment simply cannot be ascertained." *Catellus Dev. Corp. v. United States*, 31 Fed. Cl. 399, 407 (1994).  The same actions which, as discussed, put the Voisins on notice of the government's incursion upon plaintiffs' claimed property rights constitute the very facts which made plaintiffs' claim "knowable" to plaintiffs.  Based on the alleged facts, the court finds that plaintiffs cannot make a persuasive argument that their claim was unknowable or that they were unaware of the facts constituting a takings claim. The Voisins were clearly on notice as to the government's actions, and they acted by seeking answers from the General Land Office.  Compl. ¶ 39.  Plaintiffs may not have been aware of all of the facts surrounding the government's alleged taking, but they were aware of the bare essential fact that individuals, other than plaintiffs, were building summer houses on Last Island as a result of patents issued by the government.  *See Fallini v. United States*, 56 F.3d 1378, 1380 (Fed Cir. 1995)  ("[A] plaintiff does not have to possess actual knowledge of all the relevant facts in order for the cause of action to accrue.") (citation omitted).  Consequently, the court finds that the "final action" argument simply does not fall within either one of these two circumstances which might permit equitable tolling.

### (2)    Plaintiffs' Allegation of Fraud Does Not Warrant Tolling the Statute of Limitations

The Voisins argue that "[s]ince plaintiffs seek to recover the value of this land that was fraudulently obtained, the Court of Federal Claims' limitation period should not be used to preclude relief that would otherwise be available to plaintiffs."  Pls.' Opp. at 9.  The Voisins essentially allege that because the government procured Last Island through fraudulent means, the statute of limitations should be tolled with regard to their takings claim.  To support their argument, plaintiffs rely on 43 U.S.C. § 1166 (2000) and its supporting caselaw. Section 1166 provides:  "Suits by the United States to vacate and annul any patent shall be brought within six years after the date of issuance of such patents."  43 U.S.C. § 1166.  Caselaw pertaining to plaintiffs' argument states that the six-year statute of limitations set forth in 43 U.S.C. § 1166 "has been found not to bar actions to impose a constructive trust upon lands fraudulently obtained, . . . or to recover the value of lands fraudulently obtained."  *Izaak Walton League of America v. St. Clair*, 497 F.2d 849, 854 (8th Cir. 1974).

The Voisins are correct that 43 U.S.C. § 1166 allows relief in fraudulent circumstances even when the statute of limitations has expired. Pls.' Opp. at 9. In fact, 43 U.S.C. § 1166 "is subject to the well-established equitable rule that, where there is concealed fraud, the statute will not begin to run against the party complaining until he has acquired notice or knowledge of the fraud." *United States v. Booth-Kelly Lumber Co.*, 246 F. 970, 971 (D. Or. 1917); *see also United States v. Eaton Shale Co.*, 433 F. Supp. 1256, 1270 (D.C. Colo. 1977). Similarly, the statute at issue in the present case, 28 U.S.C. § 2501, could also be subject to the same equitable rule in cases of fraud. *See Alliance*, 37 F.3d at 1482 (stating that § 2501 may be tolled if the claimant shows that defendant has concealed its acts). However, in the instant case, the Voisins cannot succeed in tolling § 2501 on the basis that defendant fraudulently concealed material facts. The statute of limitations in a takings case "will be tolled if the government concealed the facts of the taking or if those facts were inherently unknowable." *Catellus Dev. Corp.*, 31 Fed. Cl. at 407. Plaintiffs, however, have not asserted a claim of fraudulent concealment against the government, nor demonstrated through alleged facts that the government acted in a fraudulent manner.

It is well-settled that a claim of fraudulent concealment must be pleaded with particularity pursuant to RCFC 9(b). *Carr v. United States*, 61 Fed. Cl. 326, 331 (2004) (citation omitted). "To succeed on such a claim, plaintiffs would have to produce evidence indicating that defendant actively had concealed its wrongdoing; a mere failure to reveal facts is insufficient." *Id.* (citing *Simmons Oil Corp. v. Tesoro Petroleum Corp.*, 86 F.3d 1138, 1142 (Fed. Cir. 1996)). Plaintiffs here have offered no evidence to suggest that the government concealed any material facts, or activities regarding the alleged taking of Last Island. The facts as set forth by plaintiffs reflect that the government's actions were open and transparent at all times. "Where the actions of the government are open and notorious, we have pointed out that plaintiff is on inquiry as to its possible injury." *Coastal Petroleum Co. v. United States*, 228 Ct. Cl. 864, 867 (1981). The Voisins knew in 1847 that the government had begun issuing patents to various parts of Last Island to the public. Compl. ¶ 38. The issuance of the patents permitted individuals, other than the Voisins, to construct summer houses on Last Island. The construction of summer houses was clearly an open and notorious activity. In fact, plaintiffs point out that "these alleged patent holders began establishing themselves on the island, mainly building summer vacation homes and a large, exclusive resort." *Id.* The building of summer houses and the establishment of a resort on Last Island were sufficient activities to put the plaintiffs on notice of the

government's actions.  Plaintiffs admit that the intrusions on Last Island motivated Jean Joseph Voisin to make the necessary inquiries with the General Land Office in 1850.  In view of the foregoing, the alleged facts do not suggest any fraudulent concealment on the part of the government, and § 2501 may not be equitably tolled where there has been no concealment of material fact by the government.

### (3)    The Alleged "Continuing Wrong" Does Not Equitably Toll the Statute of Limitations

The final tolling argument raised by plaintiffs is based upon the doctrine of "continuing wrong."  The alleged "continued and repeated refusal to recognize the Voisin family as the rightful owners of La[st] Island should be considered a continuing wrong warranting the equitable tolling of the limitations period."  Pls.' Opp. at 9.

Because the continuing wrong doctrine is largely limited to tort actions, there is limited caselaw in this court regarding its application.  *See Wechberg v. United States*, 54 Fed. Cl. 158, 164 (Fed. Cl.  2002) (stating that since the continuing wrong doctrine is "tortious in nature," this court may have limited authority to apply that doctrine because torts are excluded in 28 U.S.C. § 1491(a)(1)); *see also Simmons v. United States*, 71 Fed. Cl. 188, 192 (2006) ("Allowing the continuing tort doctrine to apply in a Court that is barred from hearing tort claims . . . , could create an anomalous situation that Congress would not have intended.").  Thus, reliance on other circuits is required for a better understanding of that doctrine.  The Second Circuit states that "a continuing violation may be found where there is proof of specific ongoing discriminatory policies or practices, or where specific and related instances of discrimination are permitted . . . to continue unremedied for so long as to amount to a discriminatory policy or practice."  *Cornwell v. Robinson*, 23 F.3d 694, 704 (2nd Cir. 1994). Similarly, the Ninth Circuit defines the "continuing wrong" doctrine as involving "repeated instances or continuing acts of the same nature, as for instance, repeated acts of sexual harassment or repeated discriminatory employment practices." *Nesvoic v. United States*, 71 F.3d 776, 778 (9th Cir. 1995) (quoting *Sisseton-Wahpeton Sioux Tribe*, 895 F.2d 588, 597 (9th Cir. 1990)).  It is appropriate to note that the examples set forth by the Second and Ninth Circuits, *supra*, all describe varying tort actions over which, as stated previously, this court has no jurisdiction.

The court is not aware of any caselaw which has applied the continuing wrong doctrine in the takings arena. Nor is the court aware of any caselaw which has applied the continuing wrong doctrine to toll § 2501. *See Simmons*, 71 Fed. Cl. at 192 (stating that the court does not find "any congressional waiver or precedent that would allow the continuing tort doctrine to extend the time limitation of 28 U.S.C. § 2501"). Finally, the court observes that the continuing wrong doctrine appears to have had a very limited application to certain claims before the Indian Claims Commission (ICC). *See Cherokee Nation of Okla. v. United States*, 21 Cl. Ct. 565, 570 (1990) ("[T]he continuing wrong doctrine acts as a jurisdictional basis for the ICC to hear Indian claims arising from actions occurring after August 13, 1946 which are so similar to pre-August 13, 1946 conduct that they are considered part of a single course of wrongful conduct.") (citation omitted). Thus, the court disagrees with plaintiffs' argument that the continuing wrong doctrine has an applicability here.

To the extent that plaintiffs may have meant to rely upon the 'continuing claims' doctrine as opposed to the continuing wrong doctrine, the continuing claims doctrine is also inapplicable to the present set of facts. A continuing claim is defined as a claim that "must be inherently susceptible to being broken down into a series of independent and distinct events or wrongs, each having its own associated damages." *Brown Park Estates-Fairfield Dev. Co. v. United States*, 127 F. 3d 1449, 1456 (Fed. Cir. 1997). Based on the above definition, the continuing claim doctrine is inapplicable to cases such as the present one, "where a single governmental action causes a series of deleterious effects, even though those effects may extend long after the initial governmental breach." *Boling v. United States*, 220 F.3d 1365, 1373 (Fed. Cir. 2000).

For example, in *Fallini v. United States*, 56 F.3d 1378 (Fed. Cir. 1995), Congress passed the Wild Free-Roaming Horses and Burros Act, 16 U.S.C. §§ 1331-1340 in 1971. *Id*. at 1379. The Act provided for the protection of wild horses and burros on public lands. In November 1992, the *Fallini* plaintiffs filed suit in this court, alleging that the government took their property without just compensation. The plaintiffs asserted that the Act prevented them from protecting their water sources from the wild horses. *Id*. at 1380. Defendant argued that the plaintiffs' takings claim should be dismissed because it was not filed within the six-year limitations period. *Id*.

In order to toll § 2501, the *Fallini* plaintiffs invoked the continuing claims

doctrine.  Under this doctrine, the plaintiffs argued that "every drink by every wild horse [was] a new and independent federal taking compensable under the Fifth Amendment."  *Id*. at 1382.  The court held that the continuing claims doctrine was inapplicable because the takings claim accrued on the date of the enactment of the statute.  "The only governmental action that could constitute a compensable taking in this case is the government's directive forbidding the Fallinis from shooing the horses away from the water that the Fallinis have produced at their developed water sources.  That governmental action cannot be regarded as recurring with every new drink taken by every wild horse . . . ."  *Id*. at 1383; *see also Boling*, 220 F.3d at 1374 (holding that the continuing claims doctrine did not apply to that case because each "quantum of erosion is not a new breach by the government").

Following Federal Circuit precedent, the present case does not fall within the continuing claims doctrine because the takings claim accrued in 1847 when the United States began issuing patents to Last Island to the public.  This, as described by the Federal Circuit, is regarded as the only governmental action which might constitute a taking.

In sum, the court finds no reason to toll § 2501 on equitable grounds. The Voisins have not been able to demonstrate that the government concealed facts of the alleged taking, or that the government's actions were "inherently unknowable" to the plaintiffs.  *Alliance*, 37 F.3d at 1482.  Because the plaintiffs' complaint was not filed within the six-year limitations period, this court dismisses plaintiffs' takings claim for lack of subject matter jurisdiction.

## C.     Lack of Jurisdiction to Entertain Plaintiffs' Request for a Declaratory Judgment

The Voisins concede that the Court of Federal Claims does not have the authority to issue declaratory judgments.  Pls.' Opp. at 11.  In that regard, plaintiffs assert that if the court determines that their takings claim against the United States is time-barred, plaintiffs request that this court dismiss their declaratory judgment request without prejudice.  The Voisins assert that the court's dismissal of their request for a declaratory judgment should be without prejudice, so as to allow plaintiffs to pursue that claim in an alternative forum.

It is well-established that the Court of Federal Claims generally does not have the authority to entertain declaratory judgment requests.  *United States v.*

*King*, 395 U.S. 1, 5 (1969); *see also Brown v. United States*, 105 F.3d 621, 624 (Fed. Cir. 1997) (holding that the Tucker Act does not provide independent relief through declaratory judgments). However, in limited circumstances, this court does possess the authority to issue declaratory relief. The court is allowed to grant declaratory relief in bid protests pursuant to 28 U.S.C. § 1491(b)(2), or in cases where the declaratory relief requested is "an incident of and collateral" to a money judgment. *James v. Caldera*, 159 F.3d 573, 580-81 (Fed. Cir. 1998). To be more precise, the court has no authority to grant equitable relief "unless it is tied and subordinate to a money judgment." *Id.* (quoting *Austin v. United States*, 206 Ct. Cl. 719, 723 (1975)).

In this case, the Voisins seek a declaratory judgment against the government holding: (1) "that any and all acts conveying, granting, or transferring title or patents to l'Isle Longue (also known as Long Island, Last Island, or Isles Dernieres) to anyone other than Jean Voisin or his descendants are null and void," and (2) "that the direct descendants of Jean Voisin are entitled to exclusive possession of, and full dominion and power over, the lands, minerals, and other natural resources subject to the 1788 Order of Survey from the Spanish government to Jean Voisin." Compl. ¶ 79. We have concluded that plaintiffs' takings claim must be dismissed for failure to file it within the six-year limitations period. Because the takings claim that would essentially have awarded plaintiffs money damages may not be sustained in this forum, the court has no jurisdiction to entertain plaintiffs' declaratory judgment request. *See Wheeler v. United States*, 11 F.3d 156, 159 (Fed. Cir. 1993) (holding that because plaintiff's claim for monetary relief was dismissed, the court lacked jurisdiction over plaintiff's claims for declaratory and injunctive relief); *Russell v. United States*, 78 Fed. Cl. 281, 289 (2007) (holding that because "plaintiff is not entitled to money damages, it is not within the jurisdiction of the court to grant purely equitable relief"); *Girling Health Sys., Inc. v. United States*, 22 Cl. Ct. 66, 73 (1990) (holding that "since there is no contract [claim], the Court lacks jurisdiction over the primary claim for money damages so there is no jurisdiction over the subordinate claim for declaratory relief"). Based on the foregoing precedent, the court lacks jurisdiction to grant the Voisins declaratory relief when it does not have jurisdiction over their takings claim.

In accordance with plaintiffs' request, this court will dismiss the declaratory judgment claim without prejudice so that plaintiffs may pursue their claim in the appropriate forum. *See Wheeler*, 11 F.3d at 159 ("[S]uch dismissals for lack of

subject matter jurisdiction pursuant to RCFC 12(b)(1) are without prejudice.").

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that:

(1)     Defendant's Motion to Dismiss and Memorandum in Support Thereof, filed on June 11, 2007, is **GRANTED**;

(2)     The Clerk's Office is directed to **ENTER** final judgment in favor of defendant **DISMISSING** plaintiffs' complaint, without prejudice; and

(3)     Each party shall bear its own costs.


/s/Lynn J. Bush
LYNN J. BUSH
Judge